### In re ELLERBEE.

(District Court, N. D. Georgia. June 22, 1912.)

BANKRUPTCY (§ 407*)—DISCHARGE—OBJECTIONS—FALSE STATEMENT.

A bankrupt, in order to purchase goods on credit, made a statement to the sellers on August 13, 1906, representing that he owed $10,550; that he had stock on hand of the value of $9,000, accounts, notes, and mortgages that were good, valued at $8,000, and real estate valued at $14,000. His petition in bankruptcy was filed December 17, 1906, in which he listed his indebtedness at $16,046.31 and his real property at $6,450. There was no explanation of the increase in his indebtedness without any increase in his assets, and the real estate sold at public auction for only $3,000, with the exception of certain land in Georgia, worth about $200. *Held*, that such statement was materially false, and

---

made for the purpose of obtaining property on credit, and was therefore a bar to the bankrupt's discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

In the matter of bankruptcy proceedings of J. H. Ellerbee. On objections to an application for a bankrupt's discharge. Sustained.

M. J. Yeomans and H. A. Wilkinson, both of Dawson, Ga., for bankrupt.

M. C. Edwards and Jas. G. Parks, both of Dawson, Ga., and Mayson & Johnson, of Atlanta, Ga., for objecting creditors.

NEWMAN, District Judge. The matter now before the court comes on an application for discharge, to which there were objections, and the matter in issue was referred to a special master. The objections were on several grounds, some of which, as disposed of by the special master, it is unnecessary to consider here, for the reason that the case is controlled by the view entertained upon one ground of objection, which will appear from an extract from the report of the special master:

"It is further found that on August 13, 1906, said bankrupt did make to objectors a statement in writing for the purpose of obtaining from them property on credit; that objectors relied upon said statement, and, so relying, on or about August 29, 1906, sold and delivered to said bankrupt property on credit, and a part of the purchase money for said property is still due said objectors. The only question upon which the undersigned is in doubt is as to whether said statement is so materially false as to be a bar to a discharge. Upon this question the following findings are made:

"(a) The bankrupt represented in said statement that his 'stock on hand' was $9,000; and, objectors failing to show that said stock would not have invoiced practically that amount, it is found that said statement is not materially false as to said item.

"(b) Bankrupt represented in said statement that his 'accounts, notes, and mortgages, good,' were $8,000; and, the objectors failing to show that he did not own said amount of accounts, notes, and mortgages which were, by him, considered good, it is found that said statement is not materially false as to that item. It therefore appears that the only items in said statement which could in any event be considered so inaccurate as to be construed as materially false are those in reference to bankrupt's indebtedness and the value of his real estate.

"(c) Bankrupt represented in said statement that he owed $10,550 on August 13, 1906, and in his petition in bankruptcy, filed December 17, 1906, he listed his indebtedness at $16,046.31, and at said hearing no explanation was made as to how said indebtedness was so increased between said dates without increasing his assets.

"(d) Bankrupt valued his real estate in said statement at $14,000, and in his said petition in bankruptcy scheduled it at $6,450; and it appears from the evidence that the greater part of it was sold later at public sale for a very much less amount, to wit, about $3,000. It was not shown, however, that all of said real estate was sold, as the 200 acres of land in Wayne county, Ga., listed in schedule B (1) of bankrupt's petition, was not shown, at said hearing, to have been disposed of. Bankrupt valued said 200 acres of land in his said petition, at only $200.

"Objectors show by testimony that land values in and around Bronwood, in Terrell county, Ga., did not decrease between the 13th day of August, 1906, and the time of the filing of said petition in bankruptcy, but did not make any proof as to the value of said Wayne county property. Said bankrupt

did not explain, nor attempt to explain, in any manner whatever, any of the discrepancies above set out.

"That bankrupt's estimate was inaccurate as to the value of his real estate there can be no doubt; and while the opinion is not entertained that a bankrupt should be so strictly bound by estimates as by statements of fact, yet it is believed that such estimates should not be so grossly inaccurate as to be suggestive of fraud. As to whether the two items last above considered are so materially false as to be a bar to a discharge is left for your honor's decision without suggestion."

The facts set out by the special master as above are not controverted in any way, and it appears from the evidence they could not be; so that the question submitted for determination on this branch of the case is whether, under the facts so stated, the bankrupt made a materially false statement in writing for the purpose of obtaining credit.

That the difference between the amount that the bankrupt said he owed in August and the amount that it appeared he owed the December following was material will hardly be questioned. That the difference between the value of his real estate as shown in the statement and that shown by his schedule in bankruptcy was material is quite apparent; and to take the amount which the property brought at the sale as the real value, it is not only a material difference, but a very material difference. It brought at the sale less than one-fourth of the estimate placed on it in the bankrupt's statement made in August, even counting in the value of the 200 acres of land, valued at $200, in Wayne county. The evidence shows that there had not been any decrease in the value of land between the time the statement was made in August and the time of the filing of the petition in bankruptcy. The difference between the statement, therefore, and the facts, being material, was the statement materially false in the sense of the bankruptcy act?

The strongest case I have found in favor of the bankrupt in this matter is Gilpin v. Merchants' Nat. Bank, 165 Fed. 607, 91 C. C. A. 445, 20 L. R. A. (N. S.) 1023. It was held there that the District Court erred in finding that the word "false" means no more than "not true," and is used in the statute "in its primary legal sense, as importing an intention to deceive, and such a statement, in order to constitute a bar to a discharge, must have been knowingly and intentionally untrue." According to Remington (volume 3, p. 751):

"The false statement in writing which is enough to deny a discharge implies a statement knowingly or recklessly made, without an honest belief in its truth, and with a purpose to mislead or deceive, and thereby to obtain from the person to whom it was made property upon credit."

According to Collier (page 286 [5]):

"The falsity of the statement must be proven; and so it is thought that it should be shown that the debtor knew it to be false, or at least did not know it to be true. The word 'false' means no more than not true. It is not usually necessary to show intention to deceive; but intention is always material as an element of proof. Intention to deceive is, of course, different from a purpose 'of obtaining such property on credit.' The statement also must be material to the transaction. It must have been, if not the moving cause of the sale on credit, a contributing cause; i. e., the seller must to an extent at least have relied on it. A fair test would seem to be: Was the

statement so 'materially false' as to warrant a suit for the rescission of the sale? Numerous decisions in the state courts determining what are actionable false representations may be consulted with profit."

The master was correct in finding:

"That bankrupt's estimate was inaccurate as to the value of his real estate there can be no doubt; and while the opinion is not entertained that a bankrupt should be so strictly bound by estimates as by statements of fact, yet it is believed that such estimates should not be so grossly inaccurate as to be suggestive of fraud."

If the indebtedness of the bankrupt had increased from $10,550 to $16,046.31 between August and December, as indicated by the master, there should be some explanation as to how the indebtedness was increased this large amount without a corresponding increase in assets. But, even passing this by, it could hardly be said that the very remarkable overestimate in the value of the real estate could have been a mere mistake of the bankrupt. It must have been overestimated for a purpose, and that purpose, it must be concluded, was to obtain credit.

The special master apparently leaves to the court the legal conclusion arising from the facts he states on this branch of the case, and the court is of the opinion that, under the facts stated, it must be held that the bankrupt made a "materially false statement in writing for the purpose of obtaining property on credit." The testimony shows that W. W. Stovall & Bro., the creditor to whom the statement was made, sold goods to the bankrupt on the strength of this statement, for which he still owed them at the time of the bankruptcy.

The application for discharge must be denied.